UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JORDAN K SANDERS                          CASE NO.  5:20-CV-01544

VERSUS                                    JUDGE TERRY A. DOUGHTY

C E O C  LLC ET AL                        MAGISTRATE JUDGE HORNSBY

MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 36] filed by Defendants

City of Shreveport ("Shreveport"), Ben Raymond ("Raymond"), and Lt. Kevin Anderson

("Anderson").

An Opposition [Doc. No. 52] was filed by Plaintiff Jordan K. Sanders ("Sanders") on

January 22, 2022.  A Reply [Doc. No. 55] was filed by Shreveport, Raymond, and Anderson on

January 28, 2022.

For the reasons set forth herein, the Motion for Summary Judgment filed by Shreveport,

Raymond, and Anderson is GRANTED.

I.      BACKGROUND

On November 6, 2020, Sanders filed a Petition for Damages against the Defendants,

Eldorado Casino Shreveport Joint Venture ("Eldorado"), Jumaraca N. Broadway ("Broadway"),

and against Anderson, Raymond, and Shreveport in the First Judicial District Court, Parish of

Caddo, State of Louisiana.  The matter was removed to this Court by Notice of Removal [Doc.

No. 1] on December 4, 2020.  Sanders claims damages as a result of injuries received on the

dance floor of the Celebrity Lounge inside of Eldorado. on November 8, 2019, at approximately

12:20 a.m.

Broadway was working security for Eldorado on the night of the incident. After receiving complaints from customers about Sanders, who was dancing on the dance floor, Broadway asked Sanders to leave. Sanders allegedly ignored these requests and continued to dance. Thereafter, Anderson, who had also received complaints about Sanders, approached Sanders. Anderson was a Shreveport Police Department ("SPD") officer who was working security at Eldorado the night of the incident. Anderson was wearing an SPD uniform.

Anderson's recollection of the events are as follows. Anderson went into the Celebrity Lounge and approached Sanders on the dance floor.  Anderson said he told Sanders and advised Sanders that Eldorado management wanted him to leave the property.[1]  Also according to Anderson, Sanders responded, "I'm not going anywhere."[2]  Anderson then grabbed Sanders' arm in an effort to escort Sanders from the lounge.  Anderson testified Sanders pushed him off and Anderson saw Sanders making a fist.[3]  According to expert Jason Latham ("Latham"), his frame-by-frame analysis of the videos shows Sanders' right hand moving toward Anderson's face and head beginning at approximately 00:18:59 of the video.[4]

Anderson testified that Sanders then raised his right hand toward his head and shoulder area, an action that Anderson perceived as an attempt by Sanders to punch him in the face.[5] Sanders raising his right hand in a "striking position" was also confirmed by Broadway.[6] Anderson stated that he then deflected Sanders' punch and struck Sanders with his right fist, which resulted in Sanders falling to the ground.[7]  Sanders' struck the back of his head on the

---

[1] Anderson depo [Doc. No. 36-8, page 27]
[2] Id at page 38
[3] Id at page 28
[4] Latham report and frame analysis [Doc. No. 36-18, 1 and 2]
[5] Anderson depo [Doc. No. 36-8, pages 42, 59]
[6] Broadway depo [Doc. No. 36-9, pages 31-34, 55, 39-40, 64-65]
[7] Anderson depo [Doc. No. 36-8 pages 26-28, 37, 42, 49]

dance floor when he fell, causing a laceration to the back of his head.  Sanders either passed out or was knocked unconscious as he hit the floor.[8]

Anderson lifted Sanders under his arms and brought him into a back hallway.  EMS was called to provide medical treatment to Sanders.  The EMS record[9] shows that Sanders was "highly intoxicated," and that Sanders was transported to Ochsner LSU, where he received five (5) staples in the back of his head.  Sanders was released from Ochsner LSU a few hours later, and he was booked into the Shreveport City Jail on charges of entering/remaining after forbidden, public drunkenness, and resisting an officer.[10]

On April 30, 2021, Sanders pled no contest to the charge of entering/remaining after forbidden.  Sanders received a thirty (30) day sentence, which was suspended, and Sanders was placed on ninety (90) days of unsupervised probation.[11]

Sanders does not remember the incident and cannot dispute the video evidence or the testimony of Broadway or Anderson.[12]  An independent witness, Jamie Garber[13], saw Sanders dancing on the dance floor and does not recall either Broadway or Anderson coming up to Sanders to tell him to leave.  She also said she did not see Sanders ball his fist.

Although it is disputed what occurred, the incident was recorded on video from several different angles[1].  This Court has reviewed all of the videos. The following details depict what the Court observed on the videos. Anderson approached Sanders on the dance floor. It appeared that Anderson grabbed Sander's shirt around his right shoulder.

---

[8] Id at page 29-30
[9] [Doc. No. 36-06, SFD Patient Care Record]
[10] [Doc. No. 36-5-3]
[11] [Doc. No. 36-7]
[12] Sanders' depo [Doc. No. 36-10, pages 64-65]
[13] Depo excerpt of Garber [Doc. No. 52-4, page 11, 16]

This Court also reviewed the Affidavit of Jason Latham, along with his report, frame analysis, and CV.[14] Latham is the co-founder and Laboratory Director for Complete Digital Forensic Solutions, Inc.  Latham was retained as an expert in the field of forensic video analysis.  Latham's CV attached shows he is well qualified in this area.  Latham sought to clarify the video evidence of the altercation on the Celebrity Lounge dance floor between Anderson and Sanders.  Latham conducted a frame analysis of the videos just prior to and during the altercation.  Latham found the frame analysis of the videos showed Sanders' right hand being raised in the general direction toward Anderson's left shoulder and head area.  The movement of Anderson's right hand was just prior to Anderson striking Sanders and was captured on three different cameras at different angles.  The condition of Sanders' right hand, (open, closed, or fist), could not be determined due to the lighting conditions, camera distance, and overall quality of the videos.

Also reviewed was the Affidavit, CV, and report of Kerry J. Najolia[15] ("Najolia") who was hired as an expert witness to review the use of force by Anderson in this incident.  Najolia's CV and report show he is also qualified in and has been accepted as an expert witness in police use of force.  After reviewing the videos and other information, Najolia's opinion was (1) Anderson's training was current based upon POST and SPD's training requirements; and (2) the use of non-lethal force by Anderson based upon what Anderson perceived to be a threat, was justified and in compliance with POST and SPD policies.

Sanders makes claims of excessive force, false arrest, *Monell* claims against Raymond and Shreveport based upon vicarious liability, failure to supervise, and/or insufficient policies and customs.  Additionally, a claim is made against Eldorado under vicarious liability as an alleged employer of Anderson and Broadway, under both state and federal law.

---

[14] [Doc. No. 36-18]
[15] [Doc. No. 36-19]

## II.    LAW AND ANALYSIS

### A.    Summary Judgment, Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharms. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id.*  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."  *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).  While courts will

"resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists.  *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added).  "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate."  *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.,* 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 323.

**B.      False Arrest**

To prevail on a false arrest claim, a plaintiff must show that he was arrested without probable cause.  *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001), cert. denied, 122 S.Ct. 46 (2001).  "Probable cause" exists when there are facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.  *Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).

Additionally, a plaintiff's false arrest claim is barred if the claim would impugn the validity of plaintiff's underlying conviction.  *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L. Ed. 2d 383 (1994).  Sanders, by entering a no contest plea to the charge of

entering/remaining after forbidden in Shreveport City Court on April 30, 2021, has been convicted of a crime for which he was arrested on November 9, 2019.  This results in his false arrest and/or false imprisonment claims being barred by *Heck*.  *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006).

Sanders concedes his false arrest claim is barred.[16]  Therefore, defendants are entitled to summary judgment on Sanders' false arrest/false imprisonment claim.

### C.      Excessive Force/Qualified Immunity

Anderson maintains the doctrine of qualified immunity protects him from liability and trial in this case as to Sanders' excessive force claims.  The doctrine of qualified immunity insulates government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73, L. Ed. 2d 396 (1982). Qualified immunity is an immunity from suit rather than a mere defense to liability and is effectively lost if a case is permitted to go to trial, thus qualified immunity questions should be resolved through summary judgment when the underlying facts are not in dispute.  *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86, L. Ed. 2d 411 (1985).  Qualified immunity questions should be resolved at the earliest possible stage in litigation.  *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991).

As indicated by *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed 2d 272 (2001), in determining whether qualified immunity applies, the first inquiry is whether a constitutional right would have been violated on the facts alleged.  Only after deciding that question may a court turn to the question whether the right at issue was clearly established at the

---

[16] [Doc. No. 52 page 21]

relevant time.  This procedure was subsequently altered to declare that *Saucier's* procedure should not be regarded as an inflexible requirement but noted the *Saucier* procedure is often beneficial.  *Pearson v. Callahan*, 555 U.S. 223, 227, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

In this case, following the *Saucier* procedure is appropriate.  This Court begins with the question of whether a constitutional right would be violated on the facts alleged.  The facts of this incident are set out in great detail in Section I of this Memorandum Ruling.

A claim that law-enforcement officers used excessive force is governed by the Fourth Amendment's "reasonableness" standard.  A determination of the objective reasonableness of a particular situation requires a careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  The inquiry requires analyzing the totality of the circumstances.  *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

This question is analyzed from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. Police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Id*. at 396-397.

The Court can decide one question or both under *Saucier*.[17]  The dispositive question is whether the violative nature of the particular conduct is clearly established.  *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).  That is because qualified immunity is inappropriate only where the officer had "fair notice" – in light of the specific context of the case, not as a broad general proposition – that his particular conduct was unlawful.  *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004).

---

[17] *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019).

Overcoming qualified immunity is especially difficult in excessive force cases.  This is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue.  *Kisela v. Hughes*, _ U.S. _, 138 S. Ct. 1148, 1153, 200 L. Ed 2d 449 (2018).  The burden of proof in a §1983 action is on the plaintiff.  The burden is heavy.  A right is "clearly established" only if relevant precedent has placed the constitutional questions beyond debate.  *Ashcroft v al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).

It is beyond debate that excessive force used by a police officer violates the Fourth Amendment.  However, this Court finds Anderson did not violate the Fourth Amendment under the facts of this case, and there was no clearly established precedent that squarely governs the specific facts of this case.

There are several videos in this case.  Sanders was intoxicated and has no idea what occurred.  Anderson's frame-by-frame analysis clearly shows Sanders' right hand going up toward Anderson's face.  Anderson testified he perceived this movement as an attempt by Sanders to punch him in the face.[18]  Anderson then used non-lethal force and struck Sanders in the face.  Although Sanders argues that Anderson had other options than to strike him, this is merely second-guessing a split-second decision.  This is the type of situation qualified immunity was intended for.  This Court finds Anderson is entitled to qualified immunity as to Sanders' excessive force claims.

### D.    Monell/Supervisory Claims

Sanders asserts the liability of Shreveport and Raymond based upon *Monell* liability. In *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed.

---

[18] Anderson depo [Doc. No. 36-8, pages 45, 59]

2d 611 (1978), municipalities can be held liable for the constitutional violations which arise from enforcement of the municipalities policies and procedures, but the municipality cannot be held liable for constitutional torts of their employees under the doctrine of respondeat superior.  In order to hold a municipality liable under § 1983, a plaintiff must identify (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that of policy or custom.  *Monell*, 436 U.S. at 694.

First, as this Court finds no constitutional violation by Anderson, then there can be no liability against Shreveport.  *Windham v. Harris Cty.*, Texas, 875 F.3d 229, 243 (5th Cir. 2017).

Second, Sanders has not identified an official policy or custom of Shreveport that was the moving force or cause of the alleged violation.  Sanders points to SPD General Order 401.01E., and 401.01F, which require that any arrest where the use of force is involved be reported to that officer's supervisor, and that the supervisor investigate the use of force.  This policy was admittedly not followed by Anderson, but it did not "cause" Sanders' injuries.  These policies would be something that would have occurred after the incidents.  There were at least three video cameras that filmed the incident in question; therefore, failure to investigate by a supervisor did not cause Sanders' injuries either.

Claims are also made against Raymond, who was Chief of SPD at the time of this incident.  A plaintiff cannot establish §1983 liability against a government official simply by virtue of the official's role as a supervisor.  *Monell*, 436 U.S. at 691.  Raymond is not alleged to have been at the scene or to have taken any part in the incident.  Raymond is alleged to be Anderson's supervisor.  A supervisory official may only be held liable if he affirmatively participates in the acts that cause the constitutional deprivation or implements unconstitutional

policies that causally result in the constitutional injury.  *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009).

Because Raymond took no part in the incident, and there are no unconstitutional policies that caused Sanders' injury, Shreveport and Raymond are entitled to summary judgment and this claim against them is dismissed.

### E.    State Law Claims

Louisiana applies the same standards to analyze claims of false arrest, excessive force, and negligent training or supervision as the standards utilized under federal law.  *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997), rehearing denied 146 F.3d 282, cert. denied. 119 S.Ct. 618 (1998).  Additionally, Louisiana applies qualified immunity principles to state constitutional law claims based on the same factors that compelled the Supreme Court of the United States to recognize a qualified good faith immunity for state officers under §1983.  *Moresi v. State*, 567 So.2d 1081, 1093 (La. 1990).

For the reasons set forth regarding the federal claims, the defendant's Motion for Summary Judgment is also GRANTED regarding the Louisiana State law claims.

## III.    CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment [Doc. No. 36] filed by Shreveport, Anderson and Raymond is **GRANTED,** and Sanders' claims against said Defendants are **DISMISSED WITH PREJUDICE**.

Monroe, Louisiana, this 22nd day of February 2022.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE