**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| **JORDAN K SANDERS** | **CIVIL ACTION NO. 20-cv-1544** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **C E O C L L C ET AL** | **MAGISTRATE JUDGE HORNSBY** |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment [Doc. No. 32] filed by Defendants, Eldorado Casino Shreveport Joint Venture ("Eldorado") and Jumarca N. Broadway ("Broadway"). An Opposition [Doc. No. 51] was filed by Plaintiff Jordan K. Sanders ("Sanders"). A Reply [Doc No. 57] was filed by Eldorado and Broadway.

For the reasons set forth herein, the Motion for Summary Judgment is **GRANTED**, and Sanders' claims against these Defendants are **DISMISSED WITH PREJUDICE**.

**I.  BACKGROUND**

On November 6, 2020, Sanders filed a petition for damages against Defendants, Eldorado, Broadway, City of Shreveport ("Shreveport"), Shreveport Police Chief Ben Raymond ("Raymond"), and Police officer Kevin Anderson ("Anderson"). This matter was removed to this court by Notice of Removal [Doc. No. 1] on December 4, 2020. The suit is a result of an incident which occurred on the dance floor of the Celebrity Lounge inside of the Eldorado Casino on November 8, 2019, at approximately 12:20 A.M.

Broadway was working security for Eldorado on the night of the incident. After receiving complaints from customers about Sanders, who was dancing on the dance floor, Broadway asked Sanders to leave. Sanders allegedly ignored these requests and continued to dance. Thereafter, Anderson, who had also received complaints about Sanders, approached Sanders. Anderson was

a Shreveport Police Department ("SPD") officer who was working security at Eldorado the night of the incident. Anderson was wearing an SPD uniform.

Although it is disputed what occurred thereafter, the incident was recorded on video from several different angles[1]. This Court has reviewed all of the videos. The following details depict what the Court observed on the videos. Anderson approached Sanders on the dance floor. It appeared that Anderson grabbed Sanders' shirt around his right shoulder. Sanders appeared to draw his right arm back or turn to the left. Anderson maintains he thought Sanders was about to strike him, so he hit Sanders in the head or face with his right fist. Sanders then fell to the floor. Sanders maintains he was injured by the incident, makes claims under both state and federal law, including claims for excessive force, false arrest, false imprisonment, abuse of office, *Monell* claims against Shreveport, and supervisor liability against Raymond.

In the instant Motion, Eldorado and Broadway argue (1) Sanders was a trespasser (because he was asked to leave and did not) under R.S. 14:63H and no duty existed to Sanders; (2) Anderson was an independent contractor for which Eldorado is not responsible; and (3) the claims against Broadway are not supported by the facts and/or the video evidence. Both sides agree that the evidence does not support any claims against Broadway.

II. **LAW AND ANALYSIS**

   A. **SUMMARY JUDGMENT**

Summary judgment shall [be] grant[ed] … if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in this case. *Anderson v. Liberty Lobby, Inc.*, 477

---

[1] [Doc. No. 36-4]

U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.

### B.  JUMARCA BROADWAY LIABILITY

The Court will first address whether the facts support Broadway's claim that he was not liable for Sanders' injuries. Sanders concedes that the videos and evidence do not support a claim against Broadway. Because the videos and other evidence show Broadway only talked to Sanders and did not grab or strike him, this portion of the Motion for Summary Judgment is **GRANTED**, and Sanders' claims against Jumarca Broadway are **DISMISSED WITH PREJUDICE**.

### C.  TRESPASSER

Eldorado argues that because Sanders was told to leave, and he did not, he became a trespasser to whom no duty was owed.

La. R.S. 14:63H provides, in pertinent part:

> The provisions of any other law notwithstanding, owners, lessees, and custodians of structures, watercraft, movable or immovable property shall not be answerable for damages sustained by any person who enters upon the structure, watercraft, movable or immovable property without express, legal or implied authorization, or

>who without legal authorization, remains upon the structure, watercraft, movable or immovable property after being forbidden by the owner, or other person with authority to do so; however, the owner, lessee or custodian of the property may be answerable for damages only upon a showing that the damages sustained were the result of the intentional acts or gross negligence of the owner, lessee or custodian.

Defendants maintain that Sanders was asked to leave by both Broadway and Anderson, but he refused to do so. Defendants argue that upon Sanders' failure to leave, he became a trespasser to whom no duty is owed.

Sanders maintains he was an invitee in the lounge at the time of his admission to the club and was entitled to leave without being assaulted. Sanders further argues that Eldorado served him alcoholic drinks, which resulted in his alleged intoxication. He additionally maintains that 14:36H does not apply because the damages Sanders sustained were the result of intentional acts or gross negligence on the part of Anderson. Finally, Sanders alleges that the issue of whether Sanders was asked to leave before he was injured is a disputed factual issue.[2]

The specific wording of La. R.S. 14:36H only applies to prohibit a claim for damages against the owners, lessees, or custodians of immovable property. Anderson is alleged to be an employee of Eldorado and for whom Eldorado is vicariously liable. Because the actions of Anderson are alleged to be intentional, the last sentence of La. R.S. 14:36H excepts claims against the owner, lessee, or custodian for intentional or grossly negligent acts of the owner, lessee, or custodian.

Even if this Court were to consider whether Sanders, an invitee, became a trespasser after being told to leave, the Court would find there are material issues of fact whether Sanders was told to leave, and if so, whether Sanders, who was allegedly visibly intoxicated, understood what he was told.

---

[2] [Doc. No. 36-17, depo. Jamie Garber]; [Doc. No. 36-19, affidavit of Kerry Najolia]

Therefore, La. R.S. 14:63H cannot be used by defendants to escape liability.

### D. INDEPENDENT CONTRACTOR

The last issue to be addressed is whether Anderson was an employee or independent contractor of Eldorado. Under Louisiana law, an employer is not liable for the torts committed by an individual who is an independent contractor in the course of performing his contracted duties, unless the employer maintains operational control over the activity in question or unless the activity was ultrahazardous. *Butler v. Boutan*, 168 So.3d 501, 505 (La. App. 1st Cir. 2014).

Sanders maintains Anderson was an employee of Eldorado, while Eldorado maintains Anderson was an independent contractor.

The distinction between an employee and independent contractor is a factual determination that must be decided on a case-by-case basis. The principal test in determining whether a relationship is an employer-employee relationship or a principal-independent contractor relationship is control over the work. It is not the supervision and control which is significant, but whether, from the nature of the relationship, the right to exercise such control exists. *Hulbert v. Democratic State C. Comm. of Louisiana*, 68 So. 3d 667, 670 (La. App. 1st Cir. 2011).

In determining whether an independent contractor relationship exists, the court considers the following factors, which are indicative of an independent contractor relationship:

1) a valid contract exists between the parties;

2) the work being done is of an independent nature of the contractor's business and the nonexclusive means the contractor may employ in accomplishing the work;

3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and

        direction, in the performance of the service, of his employer, except as to the result of the services to be rendered;

4) there is a specific price for the overall undertaking agreed upon; and

5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side, without a corresponding liability for its breach. *Hickman v. Southern Pacific Transport Co.*, 262 So2d 385 (La 1972); *Tower Credit, Inc. V. Carpenter*, 825 So.2d 1125 (La 2002).

The Court has considered two comparable cases which deal with the classification of a sheriff deputy hired to work security. In *Butler v. Boutan*, 168 So.3d 501 (La App. 1st Cir. 2014), Motel 6 and a sheriff deputy hired to work security were sued by individuals who were arrested by the sheriff deputy. The court looked at the "totality of the circumstances" in finding the deputy was an independent contractor. The extent of Motel 6's involvement was to set the deputy's hours and to provide a daily checklist schedule. The deputy was paid by Motel 6. The deputy wore his deputy uniform, including weapon and pepper spray, and drove his deputy car to the hotel. Motel 6 did not provide any training to the deputy. The deputy had control over the order and timing for the performance of the checklist. Motel 6 did not direct the deputy to make the arrest. Finding no genuine issue of fact, the court granted a motion for summary Judgment in favor of Motel 6, finding the deputy was an independent contractor.

In *Mackles v Guitierrez*, No. Civ. A. 01-1676, 2002 WL 31056586, (E.D. La. Sept. 16, 2002), the plaintiff claimed a deputy sheriff grabbed him and slammed him to the ground while the deputy was working a traffic detail for Frischhertz Electric, Inc. ("Frischhertz"). The plaintiff alleged Frischhertz was vicariously liable because the deputy was an employee of Frischhertz. Frischhertz maintained the deputy was an independent contractor.

Frischhertz paid the deputy for his services, and determined the location, dates, and duration of employment for the deputy at his work location. Additionally, Frischhertz retained the power to discharge the deputy and required the deputy to sign an indemnity agreement. Frischhertz also submitted an affidavit in its Motion for Summary Judgment, which stated the deputy was hired only to perform traffic control services and that beyond indicating which portion of the intersection he was to work, Frischhertz provided no supervision and exercised no control over the deputy's actions or methods. The deposition of the deputy was also attached, in which the deputy testified Frischhertz did not tell him how to perform his functions and that all of his actions were based upon training he had received at the police academy.

The court found the evidence did not create a material issue of fact as to Frischhertz's control over the deputy, and the court granted Frischhertz's motion for summary judgment on the grounds that the deputy was an independent contractor.

In the present case, the evidence submitted shows Anderson was paid by Eldorado to perform security for Eldorado. Anderson wore his SPD uniform and retained his authority to arrest. Monique Davis, a Shreveport City Prosecutor, was a customer the night of the incident, and she contacted SPD and made a complaint about Sanders harassing patrons. [3] Anderson testified that once he was asked to become involved, the matter became a police matter and a criminal investigation, in which SPD policy applies. Anderson described the arrest of Sanders solely as a result of his training with the SPD.

Sgt. Chad Daily of the SPD testified that police officers working extra jobs are given 1099s, and they are doing subcontract labor. He further testified they are required to follow SPD rules and regulations. [Doc. No. 31-10].

---

[3] [Doc. No. 32-12, depo. of Monique Davis]

Judith Halphen ("Halphen"), Guest Relations Manager for Eldorado, stated in her affidavit [Doc. No. 32-20] that Eldorado has an oral agreement with the SPD to provide extra security at Eldorado. Under the agreement, SPD officers are independent contractors and not employees of Eldorado. Halphen further testified that on November 8-9, 2019, Anderson was working security as an independent contractor. She further testified that since he has provided security at Eldorado, Anderson has done so solely as an SPD officer. SPD sets Anderson's pay, and Anderson does not receive any benefits from Eldorado.

Halphen further testified that Eldorado did not control or direct how Anderson was to perform his job as security at Eldorado, that Anderson had full discretion in how to do his job in providing security at Eldorado, and Eldorado did not have any policies directing Anderson how to perform security duties at Eldorado.

Anderson testified in his deposition [Doc. No. 32-6] that while working security for Eldorado, he wears his SPD uniform, identifies himself as an SPD officer, and retains his authority to arrest. Anderson also testified he must follow all SPD policies and procedures while working security for Eldorado. After the arrest of Sanders, Anderson testified he prepared SPD police reports.

In Plaintiff's Opposition [Doc. No. 51], Sanders points out that Eldorado directly paid Anderson and other off-duty SPD officers for the hours they worked[4]; the City of Shreveport received no compensation for Anderson's work at Eldorado[5]; Eldorado had the exclusive authority to fire Anderson and seek another SPD officer to replace him[6]; Anderson was responsible to Eldorado while at the casino[7]; Eldorado had the exclusive authority to assign

---

[4] [Doc. No. 32-10, depo. of Sgt. Michael Daily]
[5] [Doc. No. 32-6, depo. of Lt. Kevin Anderson]
[6] [Doc. No. 32-10, depo. of Sgt. Michael Daily]
[7] [Doc. No. 32-6, depo. of Lt. Kevin Anderson]

Anderson's duty post or to call him wherever he was needed on the property[8]; Eldorado controlled the number of officers working at the casino and controlled the hours and schedule for SPD officers working at the casino[9]; Eldorado controlled the location within which the work was to be performed[10]; Eldorado directly instructed about security tasks[11]; and Anderson was acting on behalf of Eldorado at the time he removed Sanders from the club.[12]

The most important factor in determining the relationship between Eldorado and Anderson is whether Eldorado had the right to exercise control over Anderson's work. Although there are many factual issues in this case, there is no genuine issue of material fact as to Eldorado's right to exercise control over Anderson's work as a security guard. Although Eldorado pays Anderson, that issue is not dispositive since almost all independent contractors are paid. Additionally, the fact that Eldorado can assign Anderson's duty post and fire Anderson is also not dispositive.

What is important and not disputed is that Eldorado does not have the right to control the manner in which Anderson executed his security duties. Eldorado does not have the authority to order Anderson to make arrests or the ways he should make arrests. Eldorado also does not and/or did not train Anderson. Anderson wears his SPD uniform and has discretion on how to exercise his security duties. In this case, Anderson used his training as an SPD officer to arrest Sanders, wrote an arrest report to SPD and arrested Sanders as an SPD officer. Like the courts in *Butler* and *Mackles*, this Court finds that there are no genuine issues of material fact challenging Anderson's status as an independent contractor.

---

[8] [Doc. No. 32-4, depo. of Jumarca Broadway]
[9] [Doc. No. 32-10, depo. of Sgt. Michael Daily]
[10] [Doc. No. 32-18, depo. of David Fischer]
[11] [Doc. No. 32-4, depo. of Jumarca Broadway]
[12] [Doc. No. 32-6, depo. of Lt. Kevin Anderson]

For these reasons, Eldorado's Motion for Summary Judgment is **GRANTED.**

### III. CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment [Doc. No. 32] Filed by Jumarca N. Broadway and Eldorado Casino Shreveport Joint Venture is **GRANTED**, and the claims by Plaintiff Sanders against Defendants are hereby **DISMISSED WITH PREJUDICE.**

MONROE, LOUISIANA, this 22nd day of February 2022.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE